# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES M. NEFF, JR. and STACY MARIE ADAMS-NEFF, individually and on behalf of all others similarly situated, | : : Case No. 2:19-cv-01028-DSC : : |
| Plaintiff | : : |
| v. | : : |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | : : : |
| Defendant. | |

## DECLARATION OF ONEMAIN FINANCIAL GROUP, LLC

I, Joseph Orlando, hereby declare as follows:

1. I am over the age of 21 and am otherwise competent to make this Declaration. I am familiar with the facts set forth in this Declaration, through personal knowledge, through review of corporate records maintained in the ordinary course of business by OneMain Financial Group, LLC ("OneMain"), through information I personally learned and through the documents that I reviewed in my role as Vice President/Managing Director – Collection Strategy for OneMain. I am qualified and authorized to make this Declaration on behalf of OneMain and the Related OneMain Entities (as hereinafter defined).

2. In the course of my duties as Vice President/Managing Director – Collection Strategy, I am familiar with certain account records of OneMain, which include the exhibits referenced herein. I am also familiar with the records of OneMain Financial Group, LLC, OneMain Financial Services, Inc. and OneMain Financial (HI), Inc. (collectively the "Related OneMain Entities"). These records are made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters

1

reflected in such records. These records are kept in the ordinary course of business activity conducted by OneMain and the Related OneMain Entities. It is the regular practice of OneMain and the Related OneMain Entities to make these records as part of their business activities.

3. In connection with making this Declaration, I have personally examined the records that are associated with the account referenced below. In particular, I am familiar with the records referenced in this Declaration concerning the following account: (1) Charles Neff and Stacy M. Adams-Neff – OneMain Account # originally ending in -8790. If called as a witness, I can testify to a court competently as to my knowledge of the facts contained herein.

**The Neffs' Account**

4. OneMain issued Charles Neff and Stacy M. Adams-Neff a loan bearing the account number ending in -8790 (the "Loan"). The Loan was issued pursuant to a Disclosure Statement, Note and Security Agreement dated April 4, 2014. After it was issued and before it was sold to Portfolio Recovery Associates, LLC, the Loan account number was changed to an account number ending in 5861 and to an account number ending in 7408. True and correct copies of the Disclosure Statement, Note and Security Agreement and corresponding Arbitration Agreement for the Loan (collectively, "the Agreement") are attached collectively hereto as **Exhibit 1**.

5. The Agreement contains an arbitration provision which requires, in part, that the Neffs bring any claims relating to their Agreement in arbitration.

6. In particular, the arbitration provision states as follows:

> THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.

7. The arbitration provision contained in the Agreement continues:

> "You [the Neffs] and We [OneMain] agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action."

8. According to OneMain's records, the Neffs did not object to any of the terms regarding arbitration that are contained in his Agreement.

9. The Neffs ceased making payments on the Account and OneMain charged it off on April 29, 2017.

10. Pursuant to the Forward Flow Purchase and Sale Agreement dated June 16, 2017 (the "P&S Agreement") and corresponding Bill of Sale dated June 16, 2017 (the "Bill of Sale") all rights held by OneMain and/or the Related OneMain Entities to several accounts, including the Neffs' Loan, were sold to Portfolio Recovery Associates, LLC. A true and correct copy of the P&S Agreement is attached hereto as **Exhibit 2**. A true and correct copy of the Bill of Sale is attached hereto as **Exhibit 3**.

11. The Bill of Sale states, in part, as follows:

> For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 16, 2017 between Buyer and (the "Agreement"), OneMain does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 to the Agreement and the Final Electronic File.

12. The Neffs' Loan was included as one of the "Accounts" that were transferred to Portfolio Recovery Associates, LLC pursuant to the terms of the P&S Agreement and the Bill of Sale.

13. Portfolio Recovery Associates, LLC has notified OneMain of its intention to move to compel the above-captioned matter to binding individual arbitration. OneMain hereby has no objection to Portfolio Recovery Associates, LLC's intention to file such motion.

I declare under penalty of perjury that the foregoing is true and correct. I understand that this declaration is made subject to applicable laws regarding false statements to authorities and affirm that this declaration is made to the best of my knowledge, information and belief.

Date: 8/27/2020

By: Joseph Orlando
For OneMain Financial Group, LLC.

# EXHIBIT 1

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| Charles M Neff Jr<br>STACY M ADAMS NEFF<br>510 Short Street<br>Charleroi PA 15022 | ONEMAIN FINANCIAL, INC.<br><br>3533 Mountain View Drive Centu<br>West Mifflin PA 15122 | ████8790 |
| | | Date of Loan |
| | | 04/04/2014 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 26.52 % | $ 7,511.66 | $ 9,219.34 | $ 16,731.00 |

Payment Schedule:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $ 278.85 | MONTHLY BEGINNING 05/04/2014 |
| | $ | |
| | $ | |
| | $ | |

Security: If checked, Borrower is giving a security interest in:
☐ Motor Vehicle   ☐ Mobile Home
☐ Real Property   ☐ Other:

Late Charge: If a payment is late, Borrower will be charged a late charge equal to 1.50 % per month on the past due amount until paid in full, minimum charge $1.00.

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Prepayment: If Borrower pays off early, Borrower may be entitled to a refund of part of the finance charge.

Additional Information:

| PRECOMPUTED INTEREST | SERVICE CHARGE | DATE CHARGES BEGIN | First Payment Due Date Extension Charge: $ N/A | (included in Finance Charge.) |
|---|---|---|---|---|
| $ 7361.66 | $ 150.00 | 04/04/2014 | | |

## INSURANCE DISCLOSURE

**Required Insurance:** If the collateral securing the credit is a private-passenger, non-commercial motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the collateral protection insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will primarily protect Lender's interest in the collateral, and (3) does not protect Borrower from claims by other persons. The insurer of this coverage reserves no right of subrogation against the Borrower.

**Optional Insurance:** Credit life insurance, credit disability insurance, involuntary unemployment insurance, and any other insurance products that are not required by the above paragraph are optional to Borrower and are **not required** in order to obtain credit. If Borrower desires voluntarily to purchase any of these optional insurance products, Borrower must sign below and in other required documents and will receive an insurance certificate or policy detailing the coverage terms and conditions that apply to the insurance. Borrower should refer to the terms and conditions contained in the applicable insurance certificate or policy issued for the exact description of benefits and exclusions. Borrower is encouraged to inquire about coverage and refund provisions.

If the initial amount of coverage for credit life insurance set forth in Borrower's insurance certificate or policy is equal to the Total of Payments stated above, it may exceed the amount necessary to pay off Borrower's loan at any given time. Any excess insurance coverage amount that may become payable will be paid to the appropriate party as designated in the insurance certificate or policy.

**Borrower's regular monthly loan payment if Borrower elects not to purchase insurance will be $ 257.44** .

**Termination of Optional Insurance:** Borrower may cancel any of the optional insurance products obtained at Lender's office at any time upon Borrower's written request for cancellation to Lender. If Borrower is in default under the terms of this agreement, Borrower has authorized the insurer to terminate any and/or all optional insurance products upon Borrower's default. If the Borrower cancels any optional product within the time specified in the insurance certificate, typically 30 days from the Date of the Loan, by making a written request to Lender, together with returning the policy or certificate of insurance to Lender, Borrower is entitled to a full refund of premium. After the specified time, the Borrower is entitled to a refund of the unearned portion of the premium. Upon termination of any insurance for any reason, the insurer will deliver the refund of premium, if any, to the Lender, which will: (1) apply it to the Borrower's outstanding loan balance; (2) issue a check for the refund to the Borrower; or (3) apply it as may be otherwise required by state law. Lender agrees to pay to Borrower any amount by which the refund received by Lender exceeds the outstanding loan balance.

I/we request the following insurance:

| Cost/Premium: | Insurance Type: | Insurance Term (in mos.): |
|---|---|---|
| $ NONE | | |
| $ 719.43 | SINGLE CREDIT DISAB | 60 |
| $ NONE | | |
| $ NONE | | |
| $ NONE | | |

First Borrower's Signature _____  Date 4-4-14

Second Borrower's Signature _____  Date 4-4-14

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

**PROMISE TO PAY:** Borrower promises to pay to the order of Lender the Total of Payments (which includes precomputed interest charges and Service Charges) shown above in substantially equal, consecutive monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, from the Date Charges Begin until the Total of Payments is fully paid. Each payment will be applied first to late charges, if any, then to a combined total of the Amount Financed and precomputed interest charges. If the late charge is deducted from any payment received after default occurs and the deduction results in the default of a subsequent installment, no late charge will be collected for the resulting default. If any part of the balance remains unpaid on the final payment date, Lender, at its option, may collect interest from and after maturity upon the then unpaid Amount Financed at the maximum rate permitted by the then applicable law or, if no maximum rate is prescribed, then at the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement.

The amount shown as "Service Charge" above has been paid by Borrower as a prepaid charge and is in addition to the precomputed interest on the loan. Any Service Charges are earned prior to interest on the loan balance. Prepaid Service Charges are not refundable to Borrower in the event of early payment or termination of the account.

**PREPAYMENT:** Borrower may prepay this loan in whole or in part at any time. If Borrower prepays in full or if Lender accelerates the unpaid balance because of Borrower's default, Borrower will be given a refund of the unearned portion of the Finance Charge, computed by the Rule of 78's. No refund of less than $1.00 will be given. Partial prepayment will not result in a refund of interest.

Borrower's Initials: _____

PRA 156

PA 25431-12 2/2014          Original (Branch)     Copy (Customer)          Page 1 of 3

SECURITY AGREEMENT:

[X] A. If this box is checked, this loan is unsecured.

[ ] B. If this box is checked, to secure the payment and performance hereof, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |

2. Other Property:

[ ] C. If this box is checked, Borrower's loan is secured by a Deed of Trust or Mortgage of even date on real property which requires Lender's written consent to a sale or transfer of the encumbered real property located at
_____. See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

OWNERSHIP OF PROPERTY: Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

USE OF PROPERTY: Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

INSURANCE: If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan. If any refund of unearned premium is paid to Lender upon termination of insurance, Lender will: (1) apply it to the Borrower's outstanding loan balance; (2) issue a check for the refund to the Borrower; or (3) apply it as may be otherwise required by state law. Any amount of such refund in excess of the outstanding balance of this Note will be paid to the Borrower.

FINANCING STATEMENTS: Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

RETURNED CHECK FEE: Lender may charge a fee not to exceed $ 20.00 , if a check, negotiable order of withdrawal or share draft is returned for insufficient funds or insufficient credit.

LATE CHARGE: If any installment is paid more than 10 days after the scheduled payment date, Borrower agrees to pay a late charge equal to 1.50 % per month on the past due amount until it is paid in full, with a minimum late charge of $ 1.00 . Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

DEFERMENTS: Borrower agrees to pay a deferment charge equal to 1½% per month on the amount deferred for the period of deferment if Lender, in its sole discretion, agrees to allow Borrower, upon Borrower's request, to defer payment of any monthly installment prior to or on its due date without Borrower being considered in default. Any such deferment will extend the final payment date by one month for each deferment authorized by Borrower and Lender. All other terms and conditions of the Disclosure Statement, Note and Security Agreement including the expiration dates of insurance coverages, remain unchanged by authorized deferments.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust on the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. Borrower may also be required to pay reasonable attorney's fees, court costs, and the actual and reasonable expenses of repossessing, storing, and selling the Property which secures the loan.

EFFECTS OF DEFAULT: If Borrower Defaults, Lender is authorized to terminate any Insurance purchased through the Lender's office and (1) apply it to the Borrower's outstanding loan balance; (2) issue a check for the refund to the Borrower; or (3) apply it as may be otherwise required by state law. Borrower will also deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it. Lender may dispose of the Property in any way it wishes, subject to applicable state law.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of the sale or other disposition, minus the expenses of taking, removing, holding, repairing, and selling the Property including reasonable attorney's fees, and minus the cost of paying off and removing any liens or claims on the Property, will be credited to the unpaid balance of Borrower's loan.

If the proceeds of the sale are not sufficient to pay off the entire balance plus costs, Borrowers agree to pay the remaining amount upon demand. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

Notice of the time and place of a public sale or notice of the time after which a private sale or other disposition of the Property will occur is reasonable if mailed to the Borrower's address at least five days before the sale or disposition. The notice may be mailed to the Borrower's last address shown on Lender's records.

PRA 157

Borrower's Initials: CJ SN

PA 25431-12 2/2014     Original (Branch)     Copy (Customer)     Page 2 of 3

LAW THAT APPLIES: Pennsylvania law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

OTHER RIGHTS: Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed and Arbitration Agreement is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

AUTHORIZATION TO USE CREDIT REPORT: By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

**ARBITRATION.** Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference.

The following notice applies only if this box is checked. ☐

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed and Arbitration Agreement, and authorizes the disbursements stated therein.

WITNESSES:

SIGNED:

_____ (Seal)
Charles M Neff Jr -Borrower
_____ (Seal)
Stacy M Adams Neff -Borrower
_____ (Seal)
-Borrower

ONEMAIN FINANCIAL, INC.

By: _____
(Name and Title)      04/04/2014 16:11:40

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal)  _____   _____ (Seal) _____
Signature                        Date                         Signature                         Date

PRA 158

PA 25431-12 2/2014          Original (Branch)    Copy (Customer)          Page 3 of 3

# EXHIBIT 2

# ARBITRATION AGREEMENT

**THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

| BORROWER(S) | LENDER |
|---|---|
| Charles M Neff Jr<br>STACY M ADAMS NEFF<br>510 Short Street<br>Charleroi PA 15022 | ONEMAIN FINANCIAL, INC.<br><br>3533 Mountain View Drive Centu<br>West Mifflin PA 15122 |
| Date of Note    04/04/2014 | Account Number    0318790 |

In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply: "You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives. "We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity). "Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You. "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, Service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

"Rules" means the then applicable rules and procedures that govern consumer disputes for the chosen "Administrator" (as defined below).

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration. The terms of this Agreement shall control over any inconsistency between the Rules of the Administrator and this Agreement. The party initiating the arbitration must choose one of the two following arbitration firms ("Administrator") and follow the Rules for initiating and pursuing an arbitration:

| | |
|---|---|
| American Arbitration Association<br>335 Madison Avenue, Floor 10<br>New York, NY 10017-4605<br>www.adr.org | National Arbitration Forum<br>P.O. Box 50191<br>Minneapolis, MN 55405<br>www.arbitration-forum.com |

You may obtain a copy of the Rules and a form of demand for arbitration for each Administrator by contacting the Administrator or by accessing the Administrator's internet site. We or You may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons and/or entities involved with any Credit Transaction or any other matter relating to this Disclosure Statement, Note and Security Agreement, (ii) all persons and/or entities who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons and/or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

**Claims Excluded from Arbitration.** Neither You nor We may require the other to arbitrate the following types of matters:

- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.
- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only an individual, non-class Claim. Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

**Additional Terms.**
  *Administration of Arbitration.* Arbitration shall be administered by the chosen Administrator, but if said Administrator is unable or unwilling to administer the arbitration, then an alternate Administrator shall be chosen by the party initiating the arbitration and that Administrator shall administer any arbitration required under this Agreement pursuant to its Rules. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.
  *Place of Arbitration.* The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.
  *Appeal.* Either You or We may appeal the arbitrator's award in accordance with the then applicable Optional Appeals Procedures of JAMS or in accordance with procedures otherwise agreed to by You and Us, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.
  *No Class Actions/No Joinder of Parties.* You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Agreement.
  *Depositions.* After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Borrower's Initials: _CJ_ _SN_

21228-5 11/2006        Original (Branch)        Copy (Customer)        Page 1 of 2

<u>Costs.</u> Unless the Rules of the Administrator require allocation more beneficial to You, the cost of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part. Despite our agreement to pay costs and fees described above, you have the option to pay Your share of filing fees and administrative costs consistent with the applicable Rules.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of the Note.

**Governing Law.** This Agreement is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

**Interpretation.** Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations. The arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits.

**Severability.** If the arbitrator or any court determines that one or more terms of this Agreement or the Rules are unenforceable, or would make this Agreement unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Agreement, but such determination shall not impair or affect the enforceability of the other terms of this Agreement or the Rules.

**Survival.** This Agreement applies even if the Note has been paid in full, charged off by us, or discharged in bankruptcy.

**Special Acknowledgments. You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.**

**READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

The Arbitration Agreement is executed as of the "Date of Note" written above.

_____    Borrower
Charles M Neff Jr

_____    Borrower
STACY M ADAMS NEFF

By: _____
(Lender Name and Title)

_____
Non-Obligor

# EXHIBIT 3

## EXHIBIT 2

## BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE AND ASSIGNMENT dated as of June 16, 2017 between ONEMAIN FINANCIAL GROUP, LLC, a Delaware limited liability company, ONEMAIN FINANCIAL SERVICES, INC., a Minnesota corporation, ONEMAIN FINANCIAL, INC., a West Virginia corporation, and ONEMAIN FINANCIAL (HI), INC., a Hawaii corporation ("OneMain"), with offices located at 100 International Drive, Baltimore, MD 21202 and Portfolio Recovery Associates, LLC, with its headquarters/principal place of business at 120 Corporate Blvd, Norfolk VA 23502 ("Buyer").

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 16, 2017 between Buyer and (the "Agreement"), OneMain does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 to the Agreement and the Final Electronic File.

*[Balance of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties have executed this Bill of Sale and Assignment by their duly authorized officers as of the date first written above.

**ONEMAIN:**

**ONEMAIN FINANCIAL GROUP, LLC,**

a Delaware limited liability company

By: *[signature]*
Name: Scott Bailey
Title: Vice President, Senior Managing Director

On behalf of itself and attorney in fact for ONEMAIN FINANCIAL ISSUANCE TRUST 2014-1, a Delaware statutory trust; ONEMAIN FINANCIAL ISSUANCE TRUST 2014-2, a Delaware statutory trust; ONEMAIN FINANCIAL ISSUANCE TRUST 2015-1, a Delaware statutory trust; ONEMAIN FINANCIAL ISSUANCE TRUST 2015-2, a Delaware statutory trust; ONEMAIN FINANCIAL ISSUANCE TRUST 2015-3, a Delaware statutory trust; ONEMAIN FINANCIAL ISSUANCE TRUST 2016-1, a Delaware statutory trust; ONEMAIN FINANCIAL ISSUANCE TRUST 2016-2, a Delaware statutory trust; and ONEMAIN FINANCIAL ISSUANCE TRUST 2016-3, a Delaware statutory trust.

**ONEMAIN FINANCIAL, INC.,**

a West Virginia corporation

By: *[signature]*
Name: Scott Bailey
Title: Vice President, Senior Managing Director

**ONEMAIN FINANCIAL (HI), INC.,**

a Hawaii corporation

By: *[signature]*
Name: Scott Bailey
Title: Vice President, Senior Managing Director

**ONEMAIN FINANCIAL SERVICES, INC.,**

a Minnesota corporation

By: *[signature]*
Name: Scott Bailey
Title: Vice President, Senior Managing Director

IN WITNESS WHEREOF, the parties have executed this Bill of Sale and Assignment by their duly authorized officers as of the date first written above.

Portfolio Recovery Associates, LLC:

**BUYER**,

a Delaware limited liability company

By: *[signature]*
Name: Chris Graves
Title: Authorized Signer

*[Signature Page to Bill of Sale and Assignment]*