IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES M. NEFF, JR.** individually and on behalf of all others similarly situated and **STACY MARIE ADAMS-NEFF** individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 2:19cv1028 **Electronic Filing** |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC.,** | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

Stacy Adams-Neff and Charles Neff, Jr. ("plaintiffs") commenced this action seeking

redress for themselves and on behalf of a class of all others similarly situated for alleged

violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1693, *et seq.* ("FDCPA").  The

violations assertedly arise from Portfolio Recovery Associates, LLC's ("defendant") attempt to

collect on a loan initiated by OneMain Financial ("OneMain"), a consumer discount company

regulated by Pennsylvania's Consumer Discount Company Act, 7 P. S. § 6201, *et seq.* (the

"CDCA").  Plaintiffs defaulted on the loan and OneMain charged the loan off.  OneMain then

assigned the account to defendant, an entity that does not have a license under section 6203 of

the CDCA.   Plaintiffs maintain that "[t]he CDCA specifically prohibits non-licensed, non-bank

entities [such as defendant] from purchasing CDCA loans from non-bank entities licensed under

the CDCA [such as OneMain]."  Complaint at ¶ 16 (citing 7 P. S. § 6214.I).  It also prohibits

licensed entities such as OneMain from selling CDCA regulated loans to non-licensed entities

except where approval for the assignment is obtained from the Pennsylvania Department of

Banking ("Department").  Id. at ¶ 18.  As a result, the purchase/assignment of the debt

purportedly was "void."  Id. at ¶ 19.

Defendant answered the complaint and admitted it is not a licensed consumer discount

company.  Answer at ¶ 17.  It maintains that it is not required to have such a license to purchase

the account in question.  Id.  It further raised through affirmative defense the contention that

plaintiffs' claims are subject to resolution through mandatory individual arbitration.  Id. at Third

Affirmative Defense.  The parties then engaged in an initial phase of fact discovery.  Thereafter,

defendant filed a motion to compel arbitration.  On September 30, 2021, an order was entered

granting the motion.  This opinion is issued in support of that order.

Whether a dispute must be submitted to arbitration "is a matter of contract between the

parties" and "a judicial mandate to arbitrate must be predicated upon the parties' consent."

Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764,771 (3d Cir. 2013) (quoting

Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)).

Enforcement of such contractual agreements is authorized by the Federal Arbitration Act (the

"FAA"), 9 U.S.C. § 1, et seq., provided the court is "satisfied that the making of the agreement

for arbitration . . . is not in issue."  Id. at § 4.  "In the event that the making of the arbitration

agreement is in issue, then 'the court shall proceed summarily to the trial' of that issue.'"

Guidotti, 716 F.3d at 771 (quoting Par–Knit Mills, 636 F.2d at 54 (quoting 9 U.S.C. § 4)).

"[T]he party who is contesting the making of the agreement has the right to have the issue

presented to a jury."  Id.

Review of a motion to compel arbitration can be undertaken pursuant to either Rule

12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.  Guidotti, 716 F.3d at 776.  Which

of these applies depends on the nature of the complaint and its supporting documents.  On the

one hand, "when it is apparent, based on 'the face of a complaint, and documents relied upon in

2

the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" Id. at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp.2d 474, 482 (E.D. Pa. 2011)). In contrast, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the parties are entitled to discovery on the issue of arbitrability and thereafter the issue is to be reevaluated under Rule 56 and/or summarily tried as appropriate. Id.

Here, the parties agreed to engage in an initial phase of fact discovery relative to the arbitrability of the parties' dispute. The parties do not dispute the historical facts leading to defendant's asserted attempt to collect on the loan. Instead, they rigorously dispute whether defendant acquired a right to compel arbitration in the first instance. Plaintiff relies on the assignment and defendant's lack of a license as a consumer discount company and/or OneMain's lack of authorization from the Department to sell the account to defendant. Defendant relies on the breadth and scope of the arbitration provision in the loan to have the arbitrator determine in the first instance whether defendant can rely on the loan documents to invoke the arbitration provisions contained therein. Thus, the inquiry on the issue of arbitrability extends beyond the face of the complaint and its supporting documents and it follows that Rule 56 supplies the governing standards of review.

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial.'" <u>Marten v. Godwin</u>, 499 F.3d 290, 295 (3d Cir. 2007) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986)).  Deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party.  <u>Doe v. Cnty. of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim.  <u>Nat'l State Bank v. Fed. Reserve Bank of New York</u>, 979 F.2d 1579, 1581-82 (3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Electric Industrial Corp. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in <u>Matsushita</u>).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations." <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).  Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." <u>Harter v. GAF Corp.</u>, 967 F.2d 846, 852 (3d Cir. 1992); <u>Sec. & Exch. Comm'n v. Bonastia</u>, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts,

4

are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990).  If the non-moving party's evidence is merely colorable or lacks sufficient probative force summary judgment may be granted.  Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiffs establishes the background set forth below.  Plaintiffs obtained a loan from OneMain on April 4, 2014, pursuant to a disclosure statement, note and security agreement ("the loan").  The loan consisted of $8,499.91 in principal, a $719.43 charge for disability insurance, and $7,511.66 in precomputed interest and fees assessed at a 26.52% annual percentage rate.  Plaintiffs stopped making payments on the loan and OneMain "charged-off" the account on April 29, 2017.  Defendant purchased the account from OneMain on June 16, 2017, pursuant to a purchase and sale agreement between the two.  As part of the transaction OneMain agreed to "sell, assign and transfer" all of its "right, title and interest' in the loan documents to defendant.

Defendant did not have a license as a consumer discount company under the CDCA at the time it purchased the account.  And neither OneMain nor defendant obtained prior approval of the sale from the Pennsylvania Department of Banking as mandated in 7 P. S. § 6214.I.

The account contained an arbitration agreement.  It provides:

**Agreement to Arbitrate Claims.**

**Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration.  The terms of this Agreement shall control over any inconsistency between the Rules of the Administrator and this Agreement . . . .**

**"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us.  A Claim includes, without limitation, anything related to:**

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with the Note or any Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, Service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing the Note or any Credit Transaction

<u>See</u> Affidavit of OneMain (Doc. No. 25-1) at 2-3; Affidavit of Portfolio Recovery Associates,

LLC, (Doc. No. 25-2) at 10 (Arbitration Agreement).

Additionally, the Agreement provides:

- No Class Actions/No Joinder of Parties.

You agree that any arbitration proceeding will only consider Your Claims.  Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims.  Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Agreement.

See Affidavit of OneMain Financial Group, LLC, at Exhibit 2; see also Affidavit of Portfolio Recovery Associates, LLC, at Exhibit 2.

Plaintiffs argue forcefully that OneMain's assignment of the account and defendant's attempt to acquire the rights of enforcement and collection therein constitute a transaction in violation of Pennsylvania public policy as embodied in the CDCA.  Specifically, they note that the CDCA closely regulates entities such as OneMain and the loan it made to plaintiffs as part of Pennsylvania's control of financial institutions through its law and regulations on usury lending. The CDCA expressly prohibits OneMain from selling the account to entities that are not licensed to engage in financial lending transactions authorized by the CDCA without the approval of the Department.  The sale of the account to defendant by OneMain was done in direct violation of that CDCA prohibition.  That statutory prohibition and the lack of the necessary authorization to avoid it made the purported sale of the account "void and unenforceable."  In this regard Pennsylvania has long recognized that agreements in violation of a statutory prohibition are illegal and void and two district court judges have recognized that the type of transaction between defendant and OneMain is void as illegal.  As such, plaintiffs content that defendant failed to acquire any contractual rights from OneMain and thus defendant is not a party to the loan transaction and its concomitant arbitration agreement.

Defendant maintains that it did not make the loan to plaintiffs and the account documents expressly acknowledge that the agreement extends to OneMain's assigns.  Because defendant neither negotiates nor makes loans and has not altered the account in any fashion, plaintiffs purportedly cannot invoke the CDCA as a shield to the obligations they contractually agreed to with a regulated entity.  And the section of the CDCA upon which plaintiffs rely neither declares an assignment without Department approval void nor provides for any other form of sanction or penalty for such a transaction.  Further, defendant's license under other sections of the CDCA

works to exempt it from the requirement to obtain Department approval.  And because OneMain could and did assign its rights to enforce the arbitration provision and collect on the loan documents as authorized therein, defendant argues that plaintiffs cannot avoid submitting the dispute to arbitration under the guise of ancillary rulings that pertain to the merits of their claims.

Plaintiffs' contention that the assignment of the account was the result of an illegal transaction that precluded the transfer of any contractual rights is not without support.  Judge Wilson of the Middle District of Pennsylvania agreed with this position in a thoughtful and well-reasoned "Memorandum" in Zirpoli v. Midland Funding, LLC, et al., 2021 WL 2826720 (M.D. Pa., July 7, 2021).  In Zirpoli, Judge Wilson concluded that the nature of the transaction produced an illegal and thus invalid assignment of the account, resulting in the purchasing defendant lacking privity with either the original lender or the debtor.  And because the entire contract had an illegal purpose and was void, the debt collector could not invoke the arbitration provisions in the loan documents to extricate itself from the lawsuit seeking to establish that its action violated the FDCPA and related state law causes of action.  Id. at *10.

Similarly, in the context of a legal challenge to a FDCPA claim, Judge Horan of this court considered whether a sales contract purporting to assign loans issued by a CDCA lender to an non-licensed entity without Department approval actually transferred the right to collect on the debt to the assignee.  Drawing on the Superior Court of Pennsylvania's unpublished opinion in Snyder v. Ngo, 2013 Pa. Super. Unpub. LEXIS 1183, at *11 (Pa. Super. Ct. Mar. 19, 2013), Judge Horan reasoned that while the loan contract might not necessarily be rendered void from such a transfer, the assignment itself sought to effectuate a transfer that had "an illegal purpose." That rendered the sales contract "void and unenforceable"  Mellish v. CACH, LLC, 2020 WL 1472405, *4 (W.D. Pa., March 26, 2020).  In other words, a non-licensed entity's subsequent

8

attempt to collect on a CDCA-regulated loan that was not transferred with Department approval constituted actionable conduct under the FDCPA.  Id. at *4-5.

Notwithstanding the import of these cases, plaintiff has failed to supply sufficient grounds to deny defendant's motion to compel arbitration.  The reasons for this are two-fold.

First, the federal "severability rule" requires a court to treat a provision or agreement to settle a controversy by arbitration as severable from the contract or series of contractual instruments in which it is contained.  This "doctrine" recognizes "that an arbitration clause is 'severable' and independently enforceable from the rest of the contract in which it is contained." MZM Construction Co., Inc. v. New Jersey Building Laborers Statewide Benefit Funds, 974 F.3d 386, 397 (3d Cir. 2020) (citing Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000) and Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967)).  "Under this severability rule, a party cannot avoid arbitration by attacking the contract containing the arbitration clause as a whole (the "container contract")."  Id.  Instead, in order to defeat a motion to compel arbitration the opposing party must mount a specific challenge to "the arbitration clause itself."  Id. (citing Prima Paint, 388 U.S. at 403).

For example, demonstrating fraud in the inducement of the arbitration clause would be sufficient for a court to deny a motion to compel arbitration on the ground that the parties do not have an enforceable agreement to arbitrate.  Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70-71; MZM Construction, 974 F.3d at 397.  In contrast, an opposing party's challenge based upon fraud in the inducement of the container contract as a whole raises a defense that goes to the merits of the dispute and requires the court to submit the challenge to the arbitrator.  MZM Construction, 974 F.3d at 397 ("For instance, a claim of fraud in the inducement of the arbitration clause is for the court to decide, but a claim of fraud in the inducement of the container contract is for the arbitrator.") (citing Prima Paint, 388 U.S. at 403-04).

9

The second impediment to plaintiff's challenge to defendant's motion is what has become known as the delegation principle.  This principle relates to the parties' contractual ability to assign initial determinations (often called "gateway questions") to the arbitrator.

The Federal Arbitration Act ("FAA") "reflects the fundamental principle that arbitration is a matter of contract."  Rent-A-Center, 561 U.S. at 67.  At base, arbitration "is a way to resolve those disputes - but only those disputes - that the parties have agreed to submit to arbitration."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

Under the FAA, the court is charged with the responsibility of being satisfied that the prerequisites for arbitration are present.  These have become known as gateway matters, such as whether there is a valid arbitration agreement between the parties; whether the arbitration clause within the agreement is binding; whether that clause encompasses the particular type of dispute at issue, and so forth.  Rent-A-Center, 561 U.S. at 77-78 (Stevens, J. dissenting) (collecting cases).  And the court has an important statutory obligation under § 4 of the Act to fulfill in determining that a valid, enforceable agreement to arbitrate exists, which by its nature may transgress into consideration of the formation or existence of the container contract and the parties' mutual assent to it.  MZM Construction, 974 F.3d at 401 ("we believe that the text of section 4 of the FAA - mandating that the court be 'satisfied' that an arbitration agreement exists - tilts the scale in favor of a judicial forum when a party rightfully resists arbitration on grounds that it never agreed to arbitrate at all.").  Accordingly, "under section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract" containing a provision calling for the submission of disputes to arbitration.  Id. at 402.  And this power presumptively extends to questions of contract formation and other traditional gateway questions of arbitrability.  Id.

Notwithstanding this traditional role that statutorily is assigned to the courts, the Supreme Court recognized in a series of cases that the "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, 561 U.S. at 68-69 (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-85 (2002) and Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452 (2003) (plurality opinion)).  Agreements to arbitrate threshold issues are enforceable as a matter of contract. Id.  In this regard, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id.; accord Henry Schein, 139 S. Ct. 529.   In other words, a delegation provision is itself subject to the doctrine of severability and is treated as valid and enforceable "unless the party opposing arbitration challenges 'the delegation provision specifically.'" MZM Construction, 974 F.3d at 399.  Absent such a specific challenge, "'any challenge to the validity' of the underlying arbitration agreement" must be referred to the arbitrator. Id.  (quoting Rent-A-Center, 561 U.S. at 72).

Given the import of section 4 of the FAA, courts are not to assume that the parties agreed to arbitrate gateway questions of arbitrability. First Options, 514 U.S. at 944.  Instead, the party seeking to compel arbitration of such matters must demonstrate that there is "clear and unmistakable evidence" that they agreed to do so. Rent-A-Center, 561 U.S. at 70, n.1.  This showing pertains to "the parties' manifestation of intent, not the agreement's validity." Id.  Absent such a showing, the court must answer the question of "whether the parties mutually assented to a contract containing or incorporating a delegation provision." MZM Construction, 974 F.3d at 402.

In addition, the source of the parties' assent to and delegation of any gateway issue to arbitration "must come from an 'independent source' outside the contract whose formation or existence is being disputed." MZM Construction, 974 F.3d at 402.  In the absence of clear and unmistaken assent to arbitrate such issues from a source independent of the contract the validity of which has been placed in issue, "gateway questions are for the courts to resolve." Id.

Application of the severability rule and the principles governing delegation of gateway questions require this court to grant defendant's motion to compel arbitration over plaintiff's well-based challenge.  First, OneMain and plaintiffs unquestionably entered into the loan agreement containing the arbitration provisions.  Plaintiffs do not advance a challenge to their assent to that initial contractual agreement or the validity of the terms within that contract.  In fact, they rely on those very documents in their effort to establish that defendant is seeking to collect on an instrument containing an interest rate that defendant assertedly is prohibited from charging or enforcing.

Second, the container agreement between OneMain and plaintiffs contained broad arbitration provisions that required the parties to settle by arbitration "any case, controversy, dispute, tort, disagreement, lawsuit, or claim" between them.  A "claim" is further defined to include any dispute about the loan documents "or the enforceability, or the arbitrability of any Claim pursuant to" their agreement, "including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement."  It further encompasses "[a]ny dispute about . . . collecting, or enforcing the Note or any Credit Transaction."  Agreements to resolve by arbitration disputes as to the "enforceability" of the agreement effectively delegate the initial question of contractual validity or "arbitrability" to the arbitrator.  Rent-A-Center, 561 U.S. at 68.

Thus, it is undisputed that plaintiffs assented to the initial arbitration provisions as part of the loan documents giving rise to the account. Those arbitration provisions contained a delegation provision that committed disputes about the enforceability of the loan documents and plaintiffs' indebtedness on the account to an arbitrator in the first instance. This state of affairs created an arbitration provision containing a delegation clause requiring the parties to submit to arbitration all threshold issues pertaining to enforceability.

Against this backdrop, the severability rule requires the court to submit to the arbitrator the parties' dispute as to whether defendant can avail itself of the contractual rights in the account in defense of plaintiffs' FDCPA claims. Plaintiffs do not contest the validity of the original loan documents; they challenge the validity of the assignment of the account based on the nature of the account, the restrictions the CDCA places on OneMain and defendant's failure to comply with the CDCA in obtaining the assignment. These challenges do not pertain to the arbitration provision itself. They do not seek to render the specific assignment of the arbitration clause unenforceable in and of itself. Instead, they rely on a more comprehensive source: the assignment contract between OneMain and defendant. As to that contract, plaintiffs seek to render void and unenforceable the entire contract through which the rights in the account supposedly were transferred because the assignment failed to comply with and thus was in violation of the statutorily declared public policy of Pennsylvania. This illegality does not pertain to anything about the assignment of the arbitration provision; it assertedly arises only from the assignment of the account without Department approval and defendant's quintessential attempt to collect an unauthorized interest rate. Indeed, in the absence of plaintiffs' challenge to the assignment contract on grounds that are not specific to the arbitration provision, it could not be disputed that both plaintiffs and defendant are parties to the arbitration agreement. After all,

13

plaintiffs entered into loan documents that permitted OneMain to assign the account and there is nothing illegal about the bare fact that it did so.

Where a party challenges the container contract on grounds that do not specifically challenge the arbitration provision itself but instead run to the contract as a whole, such as fraud in the inducement or unconscionability, and the arbitration provision contains a delegation clause, the issue of enforceability must be committed to the arbitrator in the first instance.  Rent-A-Center, 561 U.S. at 71; MZM Construction, 974 F.3d at 399 (where the challenge does not go directly to the delegation provision itself, "the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying arbitration agreement to the arbitrator.").  And "[e]ven when the grounds for invalidating the delegation provision and the underlying agreement are the same, the arbitrability challenge must still be directed at the delegation provision specifically to invoke a court's power to intervene."  MZM Construction, 974 F.3d at 399; Rent-A-Center, 561 U.S. at 71 ("But even where that is not the case - as in Prima Paint itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract - we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.").  And more specifically, the party seeking a judicial determination of arbitrability under such circumstances must lodge a challenge to the delegation clause that is particular and unique to the clause itself.  Rent-A-Center, 561 U.S./ at 721 ("Section 2 operates on the specific "written provision" to "settle by arbitration a controversy" that the party seeks to enforce. Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); MZM Construction, 974 F.3d at 399 ("The Rent-A-Center Court explained that the FAA operates on the delegation provision as it does on any other

14

arbitration agreement.  Thus, consistent with the severability doctrine, unless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying arbitration agreement to the arbitrator.") (citations omitted).

Plaintiffs' efforts to mount a challenge to the delegation clause itself fall short of the mark.  Plaintiffs do not identify anything in the initial transaction with OneMain that indicates or draws into question the validity of the arbitration provisions or, more importantly, the delegation clause.  They have not advanced any basis to demonstrate that the initial contract containing those provisions was "not concluded" to a point where they gained legal force and effect.  Their attack on the separate transaction involving OneMain's assignment of the contract to defendant seeks to invalidate that separate transaction by having it declared void, which in turn would preclude defendant from being able to use the loan documents to gain shelter from plaintiffs' FDCPA claims.  Their attack is based on a claim that the assignment of the account was undertaken for an illegal purpose or at the very least pursuant to a transaction that was prohibited by state law.  It is not directed to the arbitration provisions or the delegation clause to which they initially assented.  To the contrary, it seeks to render those provisions inoperable by invalidating a separate transaction: the contractual assignment by which defendant sought to receive the right to enforce the loan documents.  An attack on this independent transaction does not raise a challenge that this court may resolve under section 4 of the FAA.

Plaintiffs' attack on the enforceability of the contract containing the arbitration provisions and the delegation clause within them comes from an independent source: the validity of the transaction between OneMain and defendant.  Plaintiffs' thus do not question or dispute their assent to or the enforceability of the container contract itself, or more importantly its arbitration provisions and delegation clause.  Plaintiffs do not attack defendant's assent to that container

contract or its delegation clause.  Because that delegation clause clearly and unmistakably commits the enforceability of the arbitration provisions to the arbitrator, we lack the power to further resolve the parties' dispute as to enforceability at this juncture.  Cf. Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 210-11 (2d Cir. 2005) (Signatory to container contract containing delegation clause by incorporation was bound to submit challenge that assignment was unenforceable because of non-assignment clause to the arbitrator; the agreement's continued existence, validity and scope vis-à-vis third parties were within the agreement's delegation of gateway questions of arbitrability to the arbitrator.).  Instead, review of whether the contract and/or its arbitration provisions are enforceable by defendant must await review on the backend of the process.  See MZM Construction, 974 F.3d at 402 ("the arbitrators' determination as to whether the parties agreed to arbitrate in the first place will be reviewable *de novo* by a court of competent jurisdiction on the backend if the arbitrators render an award in the absence of a validly existing arbitration agreement over a party's objection.") (citing China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp., 334 F.3d 274, 288-89 (3d Cir. 2003)); but see CD & L Realty, LLC v. Owens Illinois, Inc., 535 F. App'x 201, 203 (3d Cir. 2013) (reviewing with deference arbitrator's award over party's objection based on challenge that the container contract was void and unenforceable).

"The notion that a party may be bound by an arbitration clause in a contract that is nevertheless invalid may be difficult for any lawyer - or any person- to accept, but this is the law of Prima Paint.  It reflects a judgment that the 'national policy favoring arbitration,' outweighs the interest in preserving a judicial forum for questions of arbitrability - but only when questions of arbitrability are bound up in an underlying dispute." Rent-A-Center, 561 U.S. at 87 (Stevens, J. dissenting) (quoting Prima Paint, 388 U.S. at 404).  The proposition that an assignment that may be void under state statutory law can operate to compel arbitration on the gateway question

16

of enforceability is even more obscure.  But plaintiffs here have raised the kind of dispute that falls within this niche, albeit in a challenge to a transaction tangential to the container contract. And the severability doctrine and the principles governing delegation as they currently stand require plaintiffs to submit to an arbitrator their legal challenge to defendant's ability to use the loan documents in defense of plaintiffs' FDCPA claims.  Consequently, we are obligated to grant defendant's motion to compel arbitration and await the arbitrator's determination on defendant's ability to 1) enforce the loan documents to compel arbitration and, if so, 2) use them in defense of plaintiffs FDCPA claim.[1]

Date: October 26, 2021

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:    Kevin Abramowicz, Esquire
       Mark G. Moynihan, Esquire
       Kevin W. Tucker, Esquire
       Lauren M. Burnette, Esquire

       (*Via CM/ECF Electronic Mail*)

---

[1]  In contrast to state law claims that are often declared to be preempted by the FAA, plaintiffs' FDCPA claim arises within a separate area of public policy effectuated by federal statute.  Thus, there are competing areas of federal public policy brought into play by the parties' current dispute.