+ IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES M. NEFF, JR.** individually and on behalf of all others similarly situated and **STACY MARIE ADAMS-NEFF** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PORTFOLIO RECOVERY ASSOCIATES, LLC.,**<br><br>Defendant. | 2:19cv1028<br>**Electronic Filing** |

# OPINION

Stacy Adams-Neff and Charles Neff, Jr. ("plaintiffs") commenced this action on behalf of themselves and a class of all others similarly situated seeking redress for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1693, *et seq.* ("FDCPA"). Presently before the court is defendant's motion to dismiss plaintiffs' amended complaint. For the reasons set forth below, the motion will be granted.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at

544.  In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability."  Id.  Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct.  Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it

2

asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

     The allegations of the amended complaint construed in the light most favorable to plaintiffs set forth the following background. The violations of the FDCPA assertedly arise from Portfolio Recovery Associates, LLC's ("PRA" or "defendant") attempt to collect on a loan initiated by OneMain Financial ("OneMain"), a consumer discount company regulated by Pennsylvania's Consumer Discount Company Act, 7 P. S. § 6201, *et seq.* (the "CDCA"), by filing a claim in plaintiffs' bankruptcy proceedings. OneMain had issued a personal loan contract (the "contract") to plaintiffs. The contract was issued in the amount of $16,731.00. Of that amount, plaintiffs received $8,499.91. The remaining balance of $8,231.09 consisted of a $719.43 insurance charge, and a $7,511.66 "precomputed" or "discount" interest charge. This interest charge yielded an annual percentage rate of 26.52%. First Amended Complaint (Doc. 61) at ¶¶ 7-11. Unlike a credit card or mortgage loan, this type of interest is not assessed on a going forward basis. Id. at ¶ 12 (citing 7 P.S. § 6213). Instead, this type of interest is baked into the contract balance, which creates a single numerical debt that a consumer must repay. Id. at ¶

13. Plaintiffs defaulted on the loan and OneMain charged the loan off. Id. at ¶¶ 14-15. OneMain then assigned the account to defendant, an entity that does not have a license under section 6203 of the CDCA. Id. at ¶¶ 21-22.

Plaintiffs maintain that "[t]he CDCA specifically prohibits licensees from selling CDCA contracts unless the buyer has a CDCA license, or the Department of Banking ("Department") pre-approves the sale." Id. at ¶ 20; Plaintiff's Response in Opposition (Doc. No. 65) at 9 (citing 7 P. S. § 6214.I). When defendant purchased the contract, it did not have a CDCA license in compliance with this section, and the Secretary of Banking did not issue prior written approval for the sale. So from plaintiff's perspective, this meant that defendant lacked the legal right to purchase the contract or collect its unpaid balance and the resulting purchase/assignment of the debt purportedly was "void." Id. at ¶¶ 21-22; Plaintiff's Response in Opposition (Doc. No. 65) at 9. Defendant nevertheless attempted to purchase the contract, and thereafter filed a proof of claim in plaintiffs' Chapter 13 bankruptcy proceeding. Id. at ¶¶ 23-24. Defendants have purchased thousands of similar contracts from OneMain and have attempted to collect them without the authority to do so. Id. at ¶ 25.

Defendant filed a motion to dismiss the amended complaint and admitted it is not licensed under the section of the CDCA highlighted by plaintiffs (i.e., not a licensed consumer discount company). Defendant's Brief in Support (Doc. No. 63) at 2. However, it maintains that it is not required to have such a license to purchase the account in question. Id. As such, the CDCA assertedly does not apply to defendant and therefore no violation of the FDCPA is plausible. Id.

The alleged violation of the FDCPA claim hinges on defendant's violation of the CDCA. In general, "FDCPA claims have four elements: (1) the plaintiff must be a 'consumer,' 15 U.S.C. § 1692a(3); (2) the defendant must be a 'debt collector,' id. § 1692a(6); (3) the challenged

4

practice must relate to the collection of a 'debt,' *id.* § 1692a(5); and (4) the defendant must have violated the FDCPA in attempting to collect the debt." Petro v. Lundquist Consulting Inc., No. 22-3051, 2024 WL 467542, at *3 (3d Cir. Feb. 7, 2024). Plaintiffs assert that they are consumers, the contract is a debt, and the defendant is a debt collector. First Amended Complaint (Doc. No. 61) at ¶ 35. Therefore, the only element in dispute is whether defendant violated the FDCPA when attempting to collect the debt.

Plaintiffs insist defendant violated the FDCPA by filing a proof of claim which constituted "false, deceptive, or misleading representations" in "connection with the collection of any debt" and/or "unfair or unconscionable means" to collect debt. See 15 U.S.C. § 1692e, 15 U.S.C. § 1692f. These allegations are premised upon plaintiffs' contention that defendant could not lawfully collect on the contract sold by OneMain because defendant lacked the proper licensing under the CDCA and did not get prior Department approval for the purchase. Thus, the claim arising from a violation of the FDCPA turns on the allegations of wrongful behavior under the CDCA.

Plaintiffs' argument is two-fold. First, they maintain the CDCA applied to OneMain's issuance of the contract and it continued to apply when OneMain charged-off the account. As such, the CDCA prohibited defendant from purchasing the account without the requisite license or Department approval, which defendant did not have/obtain. Thus, plaintiffs maintain the sale between OneMain and defendant was void and as a result defendant could not legally attempt to collect on the account. Consequently, plaintiffs assert defendant violated the FDCPA when it knowingly attempted to enforce a prohibited and void contract.

Defendant argues the CDCA simply does not apply to the sale or purchase of charged-off accounts. Further, even assuming that the CDCA does apply to charged-off accounts, the sale would not automatically be void; instead, the contracting parties would be subject to penalties

5

from the Department. In either case, defendant contends the sale did not violate the CDCA and in turn it did not violate the FDCPA by trying to collect on the charged-off debt. Thus, from defendant's perspective plaintiffs' amended complaint fails to state a claim upon which relief can be granted.

The determinative issue here is whether the CDCA applies to the purchase of charged-off accounts by an unlicensed entity without Department approval. This narrow issue was recently decided in Petro. See Petro, 2024 WL 467542. Although not binding, it presented the same issues for resolution and its analysis is highly persuasive. We thus choose to follow it and reach the same outcome here.

Prior to Petro, the Third Circuit held that the CDCA only regulates entities that are in the business of negotiating or bargaining for loans or advances and the interest rates that they may charge in such business agreements. Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 332 (3d Cir. 2022). In doing so it determined that the word "negotiate" as used in the CDCA means "to bargain." Further, "the pairing of 'negotiating' with 'making' in § 6203.A suggests that 'negotiate' should also relate to the *initiation* of loans or advances." Lutz, 49 F.4th at 332-33 (emphasis added). Thus, entities that are in the business of buying charged-off debt and trying to collect on it are not presumed to be subject to the CDCA. Id.

In Petro, the Third Circuit noted the intent of the CDCA is to protect consumers from small-dollar lenders "in the business of negotiating loans." Petro, 2024 WL 467542, at *3 (footnotes omitted). Here, the initial negotiation for the terms of the loan occurred between OneMain and plaintiffs. This was permissible because OneMain had a license under the CDCA.

Plaintiffs defaulted on their loan contract. Following this, the debt was charged-off by OneMain prior to defendant purchasing the account. First Amended Complaint at ¶¶ 14-15. As to this scenario Petro clarified:

>  default occurs when a borrower fails to pay a contract at the agreed upon "fixed or determinable time." CDCA Sections 6213.K, 6213.P, 6214.B, and 6215 address the kinds of charges and fees that a licensee may collect in the event of default. But these provisions place no limitations on the right of the licensee to charge off a defaulted loan balance and close an account where there is no longer any reasonable expectation of payment. Unlike a default, which the borrower can cure, a charge-off is a post-default decision made by the lender once the debt has been deemed uncollectible. Thus, a licensee that sells a charged-off obligation is not selling a defaulted loan contract; it is selling unsecured debt.

Petro, 2024 WL 467542, at *3 (citations omitted) (footnotes omitted). Thus, plaintiffs' loan obligations were reduced to unsecured debt when OneMains sold the charged-off account to defendant.

Given these circumstances, Petro concludes "the CDCA is a loan statute, not a debt collection statute" and does not apply to charged-off loan contract accounts. Petro, 2024 WL 467542, at *4. Therefore, while the CDCA governed "the terms of Petro's loan," it did not "impact the legality of [the defendant's] conduct" when the defendant purchased the charged-off account. Id. In other words, collecting "charged-off debt [is] an activity which the CDCA does not regulate." Id.

Critically, the contract at issue here between OneMain and defendant was for the purchase of a charged-off loan debt. Following the reasoning of Petro, the CDCA's regulatory scheme does not apply to the account at issue.

Moreover, plaintiffs' allegations do not enjoy the inference that defendant was an entity that was subject to the CDCA because it also was in the business of negotiating or bargaining for loans. In Lutz, the Third Circuit opined:

> it is not reasonable to infer that an entity that purchases charged-off debt would also be in the business of negotiating or bargaining for the initial terms of loans or advances. If anything, the amended complaint cuts against such an inference: it alleges that Capital One, not PRA, set the annual interest rate for Lutz's use of the credit card for loans and advances at 22.90% . . . Without such a favorable inference, Lutz cannot establish that PRA is subject to the CDCA and

7

its limitations on collecting interest.  And because his FDCPA claims depend on an underlying violation of the CDCA, they collapse.

Lutz, 49 F.4th at 334.

Similarly, plaintiffs here do not allege that defendant was in the business of negotiating loans or advances.  In distinct contrast, they have only alleged that defendant purchased the charged-off debt created by their defaulted loan.  Therefore, it cannot be inferred that by its actions defendant has violated the CDCA or in turn the FDCPA.

For the reasons set forth above, defendant's motion to dismiss will be granted.  An appropriate order will follow.

Date: August 20, 2025

                                                      s/David Stewart Cercone
                                                      David Stewart Cercone
                                                      Senior United States District Judge

cc:    Kevin Abramowicz, Esquire
        Mark G. Moynihan, Esquire
        Kevin W. Tucker, Esquire
        Lauren M. Burnette, Esquire

        (*Via CM/ECF Electronic Mail*)